Aimee H. Wagstaff (SBN 278480)
**WAGSTAFF LAW FIRM**
940 N. Lincoln Street
Denver, CO 80203
Tel: 303-376-6360
awagstaff@wagstafflawfirm.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| O.V., a minor, represented by his father and Guardian ad Litem Javier Vasquez,<br><br>Plaintiff,<br><br>v.<br><br>Hain Celestial Group, Inc.,<br><br>Defendant. | **COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

## <u>TABLE OF CONTENTS</u>

Page

**TABLE OF CONTENTS** ......................................................................................**i**

**INTRODUCTION**...............................................................................................**1**

**PARTIES** .........................................................................................................**2**

    I.      Plaintiff ................................................................................................2

    II.     Defendant ............................................................................................2

**JURISDICTION AND VENUE** ..........................................................................**2**

**FACTUAL ALLEGATIONS**................................................................................**3**

    I.      Rising Concerns Regarding the Presence of Toxic Heavy Metals in Baby Foods.........3

    II.     Congressional Investigation Finds Substantial Presence of Heavy Metals in Baby Foods Sparking National Outrage....................................................................4

    III.   Dangers of Toxic Heavy Metals to Babies and Children ...............................5

          A.    Exposure to Toxic Heavy Metals Has Been Consistently Associated with Brain Injury, i.e., Autism in Pediatric Populations........................................8

    IV.   Defendant Knowingly Sold Baby Foods Containing Dangerous Levels of Toxic Heavy Metals and Knew or Should Have Known of the Risks of Such Exposures in Children ................................................................................................10

    V.    Exemplary / Punitive Damages Allegations .............................................12

**PLAINTIFF-SPECIFIC ALLEGATIONS**...........................................................**13**

**CAUSES OF ACTION** .....................................................................................**13**

    COUNT I:  STRICT PRODUCTS LIABILITY – FAILURE TO WARN ..............13

    COUNT II: STRICT PRODUCTS LIABILITY – DESIGN DEFECT..................17

    COUNT III: STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT ............19

    COUNT IV: NEGLIGENCE – FAILURE TO WARN..................................20

    COUNT V: NEGLIGENT PRODUCT DESIGN.........................................23

    COUNT VI: NEGLIGENT MANUFACTURING.......................................26

**JURY TRIAL DEMAND** ..................................................................................**27**

**PRAYER FOR RELIEF**....................................................................................**27**

**INTRODUCTION**

1.      This case involves a couple of manufacturers/sellers—namely, Gerber Products Company—that *knowingly* sold baby food products ("Baby Foods") which contain dangerous levels of toxic heavy metals—lead, arsenic, and mercury (collectively "Toxic Heavy Metals"), which are known to be severe neurotoxins—and how such toxic exposures substantially contributed to Plaintiff developing lifelong brain injury. Plaintiff is a child who lives with debilitating brain injury, namely in the form of the neurodevelopmental disorder autism spectrum disorder ("ASD") and related *sequalae* because, as an infant, she consumed poisonous Baby Foods manufactured and/or sold by Defendant. This case seeks to hold the Defendant accountable for its reprehensible conduct and ensure it is punished for permanently affecting Plaintiff's ability to live a fulfilling life.

2.      That Defendant's Baby Foods are laced with staggering amounts of Toxic Heavy Metals recently made headlines following research and a Congressional investigation. In February 2021, the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform released a report containing shocking details of Defendant's tainted Baby Foods based on the submission of internal test results and company documents. Specifically, the Subcommittee found that Defendant sells Baby Foods containing levels of heavy metals ranging from tens to hundreds of parts per billion ("ppb"),[1] far eclipsing domestic and international regulatory standards. With a chilling note the Subcommittee concluded that "[m]anufacturers *knowingly* sell these products to unsuspecting parents, in spite of internal company standards and test results, and without any warning labeling whatsoever."[2] (emphasis added).  Indeed, following the Congressional findings and subsequent public uproar, one manufacturer, Beech-Nut, recalled one of its baby food product lines from the market, citing dangerous levels of arsenic in its

---

[1] Ppb (or ppbm) is used to measure the concentration of a contaminant in soils, sediments, and water. 1 ppb equals 1 μg (microgram) of substance per kg of solid (μg/kg). For the average baby weighing approximately 3kg, the quantities of Toxic Heavy Metals found in Defendant's Baby Foods, as explained below, pose significant health risks.

[2] Ex. 1, Staff Report, Subcommittee on Economic and Consumer Policy Committee on Oversight and Reform U.S. House of Representatives, *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury* (Feb. 4, 2021) ("Subcommittee Report") at 59, available at: https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

single grain rice cereal, and exited the rice cereal market altogether.[3]

3.     The high levels of Toxic Heavy Metals found in Defendant's Baby Foods are, in part, a function of the ingredients used by Defendant to manufacture its Baby Foods, the setting of dangerously inflated internal limits which Defendant willingly flouted, disregard of regulatory standards, and corporate policies which failed to test finished products before market distribution, purchase by unknowing parents, and consumption by vulnerable infants.

4.     Defendant's malicious recklessness and callous disregard for human life has wreaked havoc on the health of countless vulnerable children, all so that Defendant could maximize profits while deliberately misleading parents regarding the safety of its Baby Foods. Accordingly, this lawsuit will not only ensure that Plaintiff is duly compensated for her tragic injuries and Defendant punished, but that future generations are protected from the poisonous products that Defendant pander as "food."

## PARTIES

### I.    Plaintiff

5.     Plaintiff is a citizen of California and no other state.

### II.   Defendant

6.     Defendant Hain Celestial Group, Inc. ("Hain") is a citizen of Delaware and New York with its principal place of business located at 1111 Marcus Ave., Lake Success, NY 11042. Hain sells Baby Foods under the brand name Earth's Best Organics. Hain offers infant and baby formula and foods as well as toddler foods covering products from "organic infant cereal" to "organic snacks for toddlers and kids on the go". At all relevant times, Hain has conducted business and derived.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between the parties. In addition, Plaintiff seeks damages in excess of $75,000, exclusive of interest and costs.

---

[3] FDA, *Beech-Nut Nutrition Company Issues a Voluntary Recall of One Lot of Beech-Nut Single Grain Rice Cereal and Also Decides to Exit the Rice Cereal Segment,* available at: https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/beech-nut-nutrition-company-issues-voluntary-recall-one-lot-beech-nut-single-grain-rice-cereal-and

COMPLAINT

8.    This Court has personal jurisdiction over Defendant insofar as Defendant is authorized and licensed to conduct business in the State of California, maintains and carries on systematic and continuous contacts in this judicial district, regularly transacts business within this judicial district, and regularly avails itself of the benefits of this judicial district.

9.    Additionally, Defendant caused tortious injury by acts and omissions in this judicial district and caused tortious injury in this district by acts and omissions outside this district while regularly doing and soliciting business, engaging in a persistent course of conduct, and deriving substantial revenue from goods used or consumed and services rendered in this judicial district.

10.    Venue is proper before this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

### I.    Rising Concerns Regarding the Presence of Toxic Heavy Metals in Baby Foods

11.    In October 2019, an alliance of nonprofit organizations, scientists and donors named "Happy Babies Bright Futures" ("HBBF"), dedicated to designing and implementing "outcomes-based programs to measurably reduce babies' exposures to toxic chemicals"[4], published a report investigating the presence of Toxic Heavy Metals in baby foods.[5]  The HBBF Report tested 168 different baby foods sold on the U.S. market and concluded that "[n]inety-five percent of baby foods tested were contaminated with one or more of four toxic heavy metals—arsenic, lead, cadmium and mercury.  All but nine of 168 baby foods contained at least one metal; most contained more than one."[6]  Specifically, the HBBF report identified "puffs and other snacks made with rice flour", "[t]eething biscuits and rice rusks", "infant rice cereal", "apple, pear, grape and other fruit juices", and "carrots and sweet potatoes" manufactured by the Defendant Baby Food Companies as particularly high in Toxic Heavy Metals.[7]

---

[4] https://www.hbbf.org/solutions.
[5] Healthy Babies Bright Futures, *What's in My Baby's Food? A National Investigation Finds 95 Percent of Baby Foods Tested Contain Toxic Chemicals That Lower Babies' IQ, Including Arsenic and Lead* (Oct. 2019) ("HBBF Report"), available at: www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf).
[6] *Id.* at 6.
[7] *Id*. at 10-11

12.     The results of the HBBF report were consistent with that of the U.S. Food and Drug Administration ("FDA") which had, in 2017, detected one or more of the four Toxic Heavy Metals in 33 of 39 types of baby food tested.[8]  However, the HBBF reported that "[f]or 88 percent of baby foods tested by HBBF—148 of 168 baby foods—FDA has failed to set enforceable limits or issue guidance on maximum safe amounts."[9]  The HBBF's findings were by no means an outlier.  Eight months prior to publication of the HBBF report, a study conducted by scientists at the University of Miami and the Clean Label Project "examined lead…concentrations in a large convenience sample of US baby foods."[10]  The study detected lead in 37% of samples.[11]  This was consistent with findings by researchers examining baby food products in other parts of the world.

**II.     Congressional Investigation Finds Substantial Presence of Heavy Metals in Baby Foods Sparking National Outrage**

13.     On February 4, 2021, the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, published a report detailing its findings that Toxic Heavy Metals—including lead, arsenic, and mercury—were present in "significant levels" in numerous commercial baby food products.[12]  Four companies—Hain, Gerber, Nurture, and Beech-Nut—produced internal testing policies, test results for ingredients and finished products, and documentation about what the companies did with ingredients and/or finished products that exceeded their internal testing limits.  Three companies—Plum, Walmart, and Sprout—refused to cooperate.[13]

14.     The Subcommittee reported that the data submitted by the companies unequivocally revealed that a substantial number of Defendant's finished products and/or ingredients used to manufacture the Baby Foods are tainted with significant levels of Toxic Heavy Metals, namely lead, arsenic, and mercury.[14]  And, where the Defendant did set internal limits for the amount of metals it

[8] *Id.* at 6.
[9] *Id.* at 6.
[10] Gardener, et al., *Lead and cadmium contamination in a large sample of United States infant formulas and baby foods*, 651 SCI. TOTAL ENVIRON. 1, 822-827 (2019), available at: https://www.sciencedirect.com/science/article/abs/pii/S0048969718334442?via%3Dihub.
[11] *Id.*
[12] *See generally* Subcommittee Rpt.
[13] Subcommittee Rpt. at 2.
[14] *Id.* at 2-3.

allowed in its foods, Defendant routinely flouted its own limits and sold foods that consistently tested above its limits.

15.     **Hain (Earth's Best Organic).** Hain sold finished baby food products containing as much as 129 ppb inorganic arsenic. Hain typically only tested its ingredients, not finished products. Documents show that Hain used ingredients testing as high as 309 ppb arsenic. Hain used ingredients containing as much as 352 ppb lead. Hain used many ingredients with high lead content, including 88 that tested over 20 ppb lead and six that tested over 200 ppb lead. And, Hain does not even test for mercury in its baby food.[15] However, independent testing by HBBF of Hain's Baby Foods confirm that Hain's products contain as much as 2.4 ppb of mercury.[16]

16.     The metal concentrations discussed above greatly surpass the limits allowed by U.S. regulatory agencies. There are no FDA regulations governing the presence of Toxic Heavy Metals in the majority of Baby Foods with the exception of 100 ppb inorganic arsenic in infant rice cereal and proposed (not yet final) limits for lead in certain baby food categories.  To the extent such regulations exist, the quantities of Toxic Heavy Metals in Defendant's Baby Foods far exceed any permissible FDA levels.  To be sure, the FDA has set the maximum contaminant levels ("MCL") in bottled water at 10 ppb inorganic arsenic, 5 ppb lead, and the EPA has capped the allowable level of mercury in drinking water at 2 ppb.  However, these limits were created in reference to *adult* exposure, not infants.  Compared to these thresholds, the test results of the Defendant's Baby Foods and its ingredients are multiple folds greater than the permitted metal levels.

17.     As found by the Subcommittee, the Defendant has willfully sold—and continues to sell—contaminated Baby Foods notwithstanding its full awareness of these unacceptably high levels of Toxic Heavy Metals in its products.

**III.    Dangers of Toxic Heavy Metals to Babies and Children**

18.     According to the World Health Organization ("WHO"), Toxic Heavy Metals, specifically lead and arsenic pose a "major public health concern" for children.[17]  The Occupational

---

[15] *Id*. at 2-4.
[16] *See* HBBF Rpt. at 19.
[17] World Health Organization, *Children's Health and the Environment WHO training Package for the Health Sector* (October 2011), available at: https://www.who.int/ceh/capacity/heavy_metals.pdf.

Safety and Health Administration ("OSHA") has warned that these metals "may build up in biological systems and become a significant health hazard."[18]  Indeed, the Department of Health and Human Services' Agency for Toxic Substances and Disease Registry ("ATSDR") ranks arsenic as number *one* among substances present in the environment that pose the most significant potential threat to human health, followed by lead (second), and mercury (third).

19.    The threat presented by Toxic Heavy Metals to children's health is widely shared by the global scientific community.  For example, the FDA has set an Interim Reference Level ("IRL") of 2.2 micrograms/day for lead exposure through baby food products.[19]  That is the amount of lead exposure above which the agency considers associated with adverse neurological effects in babies. None of the Defendant Baby Food Manufacturers have ever conducted any tests or analyses to determine whether exposure to lead form its Baby Food products would result in children having blood lead amounts of 2.2 micrograms/day.  The FDA, in its guidance documents for inorganic arsenic and lead in baby food products has repeatedly acknowledged the dangers of heavy metals to the neurodevelopment of infants.

> Even low lead exposure can harm children's health and development, specifically the brain and nervous system. Neurological effects of lead exposure during early childhood include learning disabilities, behavior difficulties, and lowered IQ. Lead exposures also may be associated with immunological, cardiovascular, renal, and reproductive and/or developmental effects…Because lead can accumulate in the body, even low-level chronic exposure can be hazardous over time…Even though no safe level of lead exposure has yet been identified for children's health, the IRL serves as a useful benchmark in evaluating the potential for adverse effects of dietary lead. In particular, FDA is focused on the potential for neurodevelopmental effects from lead exposure, as review of the scientific literature indicates that *such adverse effects of lead consistently occur at a blood lead level associated with FDA's IRL for children*. (emphasis added).[20]

20.    As one recent study observed, "[t]he implications of heavy metals with regards to children's health have been noted to be more severe compared to adults. The elements' harmful consequences on children health include mental retardation, neurocognitive disorders, behavioral

---

[18] OSHA, *Toxic Metals*, available at: https://www.osha.gov/toxic-metals.
[19] FDA (January 2023) *Action Levels for Lead in Food Intended for Babies and Young Children: Draft Guidance For Industry*, available at: https://www.fda.gov/media/164684/download.
[20] *Id*.

disorders, respiratory problems, cancer and cardiovascular diseases.  Much attention should be given to heavy metals because of their high toxicity potential, widespread use, and prevalence."[21]  Children and, even more so, babies have higher exposure to metals compared to adults because they consume more food in relation to their body weight and absorb metals more readily than adults by 40 to 90%.[22]  And, the mechanisms needed to metabolize and eliminate heavy metals are comparatively undeveloped in childhood, with babies having weaker detoxifying mechanisms and poorer immune systems than adults.[23]  For example, liver pathways that in adulthood metabolize absorbed arsenic do not mature until mid-childhood; un-excreted arsenic thus continues to circulate and is deposited in other organs.[24]  According to Linda McCauley, Dean of the Nell Hodgson Woodruff School of Nursing at Emory University, who studies environmental health effects, "[n]o level of exposure to these [heavy] metals has been shown to be safe in vulnerable infants."[25]  Thus, "the major windows of developmental vulnerability occur during infancy and early childhood due to continuing brain development after birth."[26]  In short, even small amounts of exposure to Toxic Heavy Metals can have devastating health outcomes for babies and children.

21.    Notably, Defendant never conducted any kind of risk assessments or analyses to determine whether exposure to its baby food products exposed children to lead amounts known to harm neurodevelopment.  On information and belief, exposure to Defendant's Baby Food products exposed Plaintiff to heavy metal concentrations known to result in brain injury.

22.    Indeed, upon and information and belief, Gerber (through research conducted by its parent company's own private research group Nestle Research Center in Switzerland) has been aware

---

[21] Osman, et al., *Exposure routes and health effects of heavy metals on children*, 32 BIOMETALS 563–573 (2019), available at: https://link.springer.com/article/10.1007%2Fs10534-019-00193-5#citeas.
[22] Stein, et al., *In harm's way: toxic threats to child development*, 23 J DEV BEHAV PEDIATR.1 S13–S22 (2002).
[23] Gorini, et al., *The Role of Heavy Metal Pollution in Neurobehavioral Disorders: a Focus on Autism* 1 REV. J. AUTISM DEV. DISORD. 1, 354–372 (2014), available at: https://link.springer.com/article/10.1007/s40489-014-0028-3.
[24] Del Rio, et al., *A comparison of arsenic exposure in young children and home water arsenic in two rural West Texas communities* 17 BMC PUBLIC HEALTH 850 1-13 (2017), available at: https://bmcpublichealth.biomedcentral.com/articles/10.1186/s12889-017-4808-4.
[25] Roni Caryn Rabin, *Some Baby Food May Contain Toxic Metals, U.S. Reports* (NY TIMES, Feb 4. 2021), available at: https://www.nytimes.com/2021/02/04/health/baby-food-metals-arsenic.html
[26] Gorini, et al. *supra*.

for over two decades that low levels of arsenic can harm children's neurodevelopment.  Indeed, in its 2019 letter to Congress, Nestle bragged that it has access to a network of 4,800 experts, including scientists and toxicologists.  Notwithstanding this, neither Gerber nor Nestle conducted any kind of risk assessments or analyses to determine whether exposure to its Baby Food products exposed children to lead amounts known to harm neurodevelopment until concerns regarding contaminated baby foods entered widespread public discourse in recent years.

   A.  **Exposure to Toxic Heavy Metals Has Been Consistently Associated with Brain Injury, i.e., Autism in Pediatric Populations**

   23.   It is well-known that exposure to heavy metals in early life can cause brain injury at low levels of exposure.  And one of the ways in which such brain injury can present in a child is in the form of the neurodevelopmental disorder ASD.  As the U.S. Centers for Disease Control observed in its 2020 Toxicological Profile for Lead, at just ≤10 μg/dL: "The following neurobehavioral effects in children have been associated with [lead]: "Altered mood and behaviors that may contribute to learning deficits, including *attention deficits, hyperactivity*, *autistic behaviors*, conduct disorders, and delinquency."[27] (emphasis added).  Likewise, the NIH states: "prenatal and early childhood exposure to heavy metals…may be linked to autism spectrum disorder."[28]

   24.   Multiple studies, reviews, and meta-analyses conducted throughout various parts of the world over the last decade have consistently observed that early life exposure to heavy metals can cause brain injury and, specifically, brain injury which manifests as ASD.

   25.   For example, four meta-analyses published in 2014, 2017, 2019 and 2020, respectively, all observed  a consistent association between exposure to arsenic and mercury and ASD in children; with the authors in all three studies recommending – based on the data – that exposure to such metals in children be reduced as much as possible, and one of the study authors specifically concluding that "Results of the current meta-analysis revealed that mercury is an important causal factor in the etiology of ASD."[29]

---

[27] ATSDR (2020) *Toxicological Profile for Lead*, available at: https://www.atsdr.cdc.gov/toxprofiles/tp13.pdf.
[28] NIH, ASD & the Environment.
[29] Jafari, et al., *The association between mercury levels and autism spectrum disorders: A systematic review and meta-analysis* 44 J. TRACE. ELEMEN. IN MED. & BIOL. 289-297 (2017); Wang, et al.,

26.     In a recent 2017 NIH-funded prospective observational study, the authors examined the risk of ASD outcome in twins based on their respective body burden of lead.  The study concluded in no uncertain terms that "prenatal and early childhood disruption (excess or deficiency) of multiple metals during critical developmental windows is associated with ASD, and suggests a role for elemental dysregulation in the etiology of ASD."[30]

27.     Similarly, a large, prospective study from 2016 in Korean school children observed that low levels of lead exposure in early life are associated with autism, the authors specifically concluding: "even low blood lead concentrations…are associated with more autistic behaviors…, underscoring the need for continued efforts to reduce lead exposure."[31]

28.     Furthermore, repeated associations between early life metal exposure and ASD have also been observed during the pre-natal timeframe, lending further strength to the findings of post-natal studies.  For example, in a 2021 study by Skogheim and colleagues, the authors prospectively assessed the relationship between pre-natal metal exposure in various biomarkers and autism risk. The study concluded that "[r]esults from the present study show several associations between levels of metals and elements during gestation and ASD in children. The most notable ones involved arsenic…mercury…and lead. Our results suggest that even population levels of these compounds may have negative impacts on neurodevelopment."[32]  Similarly, in a study by the research group assessing the New Hampshire Birth Cohort, the authors evaluated the neurotoxic effects of heavy

---

*Exposure to Inorganic Arsenic and Lead and Autism Spectrum Disorder in Children: A Systematic Review and Meta-Analysis*, 21 CHEM RES. TOXICOL. 32, 1904-1919 (2019), available at: https://pubmed.ncbi.nlm.nih.gov/31549506/; Sulaiman, et al., *Exposure to Aluminum, Cadmium, and Mercury and Autism Spectrum Disorder in Children: A Systematic Review and Meta-Analysis*, 33 Chem. Res. Toxicol. 11, 2699-2718 (2020), available at: https://pubmed.ncbi.nlm.nih.gov/32990432/; Yoshimasu, et al., *A meta-analysis of the evidence on the impact of prenatal and early infancy exposures to mercury on autism and attention deficit/hyperactivity disorder in the childhood*, 44 NEURO TOXICOL. 121-131 (2014), available at: https://pubmed.ncbi.nlm.nih.gov/24952233/.

[30] Arora, et al., *Fetal and postnatal metal dysregulation in autism* NATURE COMM. 1-10 (2017), available at: https://www.nature.com/articles/ncomms15493.

[31] Kim, et al., *Low-Level lead Exposure and Autistic Behaviors in School-Age Children,* 53 NEUROTOXICOLOGY 193-200 (2016).

[32] Skogheim, et al. *Metal and essential element concentrations during pregnancy and associations with autism spectrum disorder and attention-deficit/ hyperactivity disorder in children* 152 1-14 (2021).

metals during various stages of pregnancy and concluded: "Our results support the hypothesis that exposure to…As in mid to late pregnancy may be neurodevelopmentally harmful."[33]

29.     Moreover, such results have been replicated in studies throughout the world, including China, Korea, the U.S., Europe, and Egypt, implicating arsenic, mercury, and lead in pediatric diagnoses of autism and autistic behaviors, with a 2018 Chinese study concluding: "[t]he results of this study are consistent with numerous previous studies, supporting an important role for heavy metal exposure, particularly mercury, in the etiology of ASD.[34]  Indeed, a 2015 Egyptian study noted "[e]nvironmental exposure to these toxic heavy metals, *at key times in development*, may play a causal role in autism." (emphasis added).[35]

30.     The fact that such results, and many more, have been observed in multiple studies, conducted by different researchers, at different times, in different parts of the world, in children of multiple ages, utilizing different study methods (prospective, case-control and cross-sectional epidemiological analyses) and measuring a variety of end-points (including hair, blood, and urine), strongly supports a causal relationship between exposure to Toxic Heavy Metals and the development of ASD in children.

**IV.     Defendant Knowingly Sold Baby Foods Containing Dangerous Levels of Toxic Heavy Metals and Knew or Should Have Known of the Risks of Such Exposures in Children**

31.     During the time that Defendant manufactured and sold Baby Foods in the United

---

[33] Doherty, et al., *Periconceptional and prenatal exposure to metal mixtures in relation to behavioral development at 3 years of age* 4 ENVIRON. EPIDEMIOL. (2020.

[34] Li, et al., *Blood Mercury, Arsenic, Cadmium, and Lead in Children with Autism Spectrum Disorder,* 181 BIOL TRACE ELEM RES 31-37 (2018), available at: https://pubmed.ncbi.nlm.nih.gov/28480499/; Ryu, et al., *Associations of prenatal and early childhood mercury exposure with autistic behaviors at 5 years of age: The Mothers and Children's Environmental Health (MOCEH) study*, 15 SCI. TOTAL ENVIRON. 251-257 (2017), available at: https://www.sciencedirect.com/science/article/abs/pii/S0048969717316479; Dickerson, et al., *Autism spectrum disorder prevalence and associations with air concentrations of lead, mercury, and arsenic*, 188 ENVIRON MONIT. ASSESS. 407 (2016); Mohamed, et al., *Assessment of Hair Aluminum, Lead, and Mercury in a Sample of Autistic Egyptian Children: Environmental Risk Factors of Heavy Metals in Autism* BEHAV. NEUROL. (2015), available at: https://pubmed.ncbi.nlm.nih.gov/26508811/; Adams, et al., *Toxicological Status of Children with Autism vs. Neurotypical Children and the Association with Autism Severity,* 151 BIOL. TRACE ELEM. RES 171-180 (2013), available at: https://pubmed.ncbi.nlm.nih.gov/23192845/.

[35] Mohamed, et al.

States, the weight of evidence showed that Defendant's Baby Foods exposed babies and children to unsafe levels of Toxic Heavy Metals.  Defendant failed to disclose this risk to consumers through any means.

32.     As discussed above, both independent testing, the Defendant's internal evaluations of its Baby Foods, and the Defendant's representations and disclosures to the Subcommittee and FDA reveal the presence of substantial amounts of Toxic Heavy Metals in Defendant's products.  As such, Defendant knew or should have known that its Baby Foods contain dangerous of Toxic Heavy Metals.

33.     Indeed, independent testing performed in early 2019 demonstrated elevated amounts of such Toxic Heavy Metals in Baby Food products on the U.S. market,[36] and the HBBF Report further confirmed such contamination of Defendant's Baby Foods.[37]  And, as the Subcommittee found, the Defendant continued to sell its Baby Foods even after testing of both ingredients and finished products revealed the presence of substantial amounts of Toxic Heavy Metals.[38]

34.     Moreover, the scientific literature on the dangers of Toxic Heavy Metals—particularly as it relates to adverse effects on the neurodevelopment of children—have been well known for decades.  Defendant, as manufacturer and retailer of Baby Foods, is held to the standard of experts responsible for keeping abreast of the latest scientific developments related to the dangers of contaminants in its products. Defendant failed to take action in protecting vulnerable children from exposure to the Toxic Heavy Metals in its foods and, thus, subjected them to the risk of brain injury which can manifest as neurodevelopmental disorders such as ASD and related *sequalae*.

35.     To be clear, the Defendant is able to manufacture Baby Foods that do not pose such a dangerous risk to the health of infants and children by using alternative ingredients, not adding certain pre-mix minerals and vitamins high in Toxic Heavy Metals, or sampling its ingredients from other sources. At the very least, Defendant was under a duty to warn unsuspecting parents of the presence of Toxic Heavy Metals in its Baby Foods.  However, Defendant took no action, continued to sell its products with full knowledge of the risks posed by its Baby Foods, and misled consumers

---

[36] *See* Gardener, et al., *supra*.
[37] *See* HBBF Report, *supra*.
[38] *See, e.g.,* Subcommittee Report at 13-14.

regarding the safety of its products, all to the harm of children.

## V.   Exemplary / Punitive Damages Allegations

36.    Defendant's conduct as alleged herein was done with reckless disregard for human life, oppression, and malice. Defendant's conduct is particularly reprehensible given that its toxic foods were directed at vulnerable babies—a population group far more susceptible than adults to the neurotoxic dangers of heavy metals.

37.    Defendant was fully aware of the safety risks of Baby Foods, particularly the dangerous potential of its Baby Foods given the high content of Toxic Heavy Metals that have all been associated with brain injury in children.  Nonetheless, Defendant deliberately crafted its label, marketing, and promotion to mislead consumers. Indeed, Defendant repeatedly market its Baby Foods as safe for consumption and go so far as claiming that it adheres to "the strictest standards in the world"; and provide "baby's food full of nutrition while meeting standards strict enough for tiny tummies" as well as other statements and representations that hold out its Baby Foods as safe for consumption by infants. In actual fact, as discussed above, Defendant routinely sold Baby Foods containing astronomical amounts of Toxic Heavy Metals, regularly flouted its own internal limits of Toxic Heavy Metals in Baby Foods and failed to disclose to consumers that its products contained such dangerous contaminants.

38.    This was not done by accident or through some justifiable negligence.  Rather, Defendant knew it could profit by convincing consumers that its Baby Foods were harmless to humans, and that full disclosure of the true risks of the Toxic Heavy Metals present in the Baby Foods would limit the amount of money Defendant would make selling the products.  Defendant's object was accomplished not only through a misleading label, but through a comprehensive scheme of selective misleading research and testing, failure to test, false advertising, and deceptive omissions as more fully alleged throughout this pleading.  Parents were denied the right to make an informed decision about whether to purchase Defendant's Baby Food for their children, knowing the full risks attendant to that use. Such conduct was done with conscious disregard of Plaintiff's rights.

39.    Accordingly, Plaintiff requests punitive damages against Defendant for the harms caused to Plaintiff.

1

## PLAINTIFF-SPECIFIC ALLEGATIONS

2       40.     Plaintiff was diagnosed with ASD at approximately 13 years of age.

3       41.     Plaintiff started consuming Baby Food products manufactured and/or sold by the

4   Defendant in 2008 and consumed Defendant's Baby Food products at various times through early

5   childhood.

6       42.     Upon information and belief, the Baby Food products manufactured/marketed by

7   Defendant and consumed by Plaintiff were all contaminated with substantial quantities of Toxic

8   Heavy Metals, namely lead, arsenic, and mercury – exceeding that of any regulatory limits.

9       43.      Upon information and belief, as a direct and proximate result of consuming

10  Defendant's Baby Foods, Plaintiff was exposed to substantial quantities of Toxic Heavy Metals,

11  namely lead, arsenic, and mercury.

12      44.     As a direct and proximate result of consuming Defendant's Baby Foods and the

13  exposure to the Toxic Heavy Metals therein – Plaintiff suffered brain injury which manifested as

14  ASD and related *sequalae*.

15      45.     Based on prevailing scientific evidence, exposure to the Toxic Heavy Metals at the

16  levels contained in Defendant's Baby Foods can cause brain injury which can manifest as the

17  neurodevelopmental disorders ASD and related *sequalae* in humans.

18      46.     Had any Defendant warned Plaintiff's carers that Defendant's Baby Foods could lead

19  to exposure to Toxic Heavy Metals or, in turn, brain injury, Plaintiff would not have consumed the

20  Baby Foods.

21      47.     Plaintiff alleges that as a direct and proximate result of Plaintiff's consumption of

22  Baby Foods supplied and/or distributed by Defendant, Plaintiff suffered significant harm, conscious

23  pain and suffering, physical injury and bodily impairment including, but not limited to brain injury

24  which manifested as ASD and related *sequelae*.

25

## CAUSES OF ACTION

26  **COUNT I:  STRICT PRODUCTS LIABILITY – FAILURE TO WARN**

27      48.     Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as

28  if fully stated herein.

49.     At all relevant times, Defendant engaged in the business of researching, testing, developing, designing, manufacturing, labeling, marketing, selling, inspecting, distributing, and promoting Baby Foods, which are defective and unreasonably dangerous to consumers, including Plaintiff, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of Baby Foods and Toxic Heavy Metals.  These actions were under the ultimate control and supervision of Defendant.  At all relevant times, Defendant registered, researched, manufactured, distributed, marketed, and sold Baby Foods and aimed at a consumer market.

50.     Defendant researched, tested, developed, designed, manufactured, labeled, marketed, sold, inspected, distributed, and promoted, and otherwise released into the stream of commerce its Baby Foods, and in the course of same, directly advertised or marketed the products to consumers and end users, including Plaintiff, and therefore had a duty to warn of the risks associated with the consumption of Baby Foods.

51.     At all relevant times, Defendant had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, and distribute, maintain, supply, provide proper warnings, and take such steps as necessary to ensure its Baby Foods did not cause users and consumers to suffer from unreasonable and dangerous risks. Defendant had a continuing duty to warn Plaintiff of dangers associated with Baby Foods. Defendant, as a manufacturer, seller, or distributor of food, is held to the knowledge of an expert in the field.

52.     At the time of manufacture, Defendant could have provided the warnings or instructions regarding the full and complete risks of Baby Foods because it knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such products.

53.     At all relevant times, Defendant failed and deliberately refused to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of its product and to those who would foreseeably use or be harmed by Defendant's Baby Foods.

54.     Even though Defendant knew or should have known that Baby Foods posed a grave risk of harm, it failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure to the products. The dangerous propensities of its products and the neurotoxic characteristic of Toxic Heavy Metals contained in Defendant's Baby Foods, as described above, were

known to Defendant, or scientifically knowable to Defendant through appropriate research and testing by known methods, at the time it distributed, supplied or sold the product, and were not known to end users and consumers, such as Plaintiff. The product warnings for Baby Foods in effect during the time period Plaintiff consumed Baby Foods were vague, incomplete or otherwise inadequate, both substantively and graphically, to alert consumers to the severe health risks associated with Baby Foods consumption.

55.     Defendant knew or should have known that its products created significant risks of serious bodily harm to consumers, as alleged herein, and Defendant failed to adequately warn or instruct consumers, i.e., the reasonably foreseeable users, of the risks of exposure to its products. Defendant failed to warn and have wrongfully concealed information concerning the dangerous level of Toxic Heavy Metals in its Baby Foods and the potential for consumed Baby Foods to expose children to Toxic Heavy Metals, and further, have made false and/or misleading statements concerning the safety of Baby Foods.

56.     At all relevant times, Defendant's Baby Foods reached the intended consumers, handlers, and users or other persons coming into contact with these products, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendant.

57.     Plaintiff was exposed to Defendant's Baby Foods without knowledge of their dangerous characteristics.

58.     At all relevant times, Plaintiff was exposed to Defendant's Baby Foods while using them for their intended or reasonably foreseeable purposes, without knowledge of their dangerous characteristics.

59.     Plaintiff could not have reasonably discovered the defects and risks associated with Baby Foods prior to or at the time of Plaintiff consuming Baby Foods.  Plaintiff relied upon the skill, superior knowledge, and judgment of Defendant to know about and disclose serious health risks associated with using Defendant's products.

60.     Defendant knew or should have known that the information disseminated with its Baby Foods were inadequate, failed to communicate adequate information on the dangers of

consumption, and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended and reasonably foreseeable uses.

61.     The information that Defendant did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled consumers such as Plaintiff to avoid consuming the products.  Instead, Defendant disseminated information that was inaccurate, false, and misleading, and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries with use of and/or exposure to Baby Foods; continued to aggressively promote the safety of its products, even after it knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of consuming Baby Foods.

62.     This alleged failure to warn is not limited to the information contained on Baby Foods labeling. Defendant was able, in accord with federal law, to comply with relevant state law by disclosing the known risks associated with Baby Foods through other non-labeling mediums, *i.e.*, promotion, advertisements, public service announcements, and/or public information sources.  But the Defendant did not disclose these known risks through any medium. The ability to provide such warnings is not prohibited by any federal law.

63.     Furthermore, Defendant possesses a First Amendment Right to make truthful statements about the products it sell, and no law could lawfully restrict that constitutional right.

64.     Had Defendant provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with its Baby Foods, Plaintiff could have avoided the risk of developing injuries and could have obtained or used alternative products. However, as a result of Defendant's concealment of the dangers posed by its Baby Foods, Plaintiff could not have averted her injuries.

65.     Defendant's conduct, as described above, was reckless. Defendant risked the lives of babies and children, including Plaintiff, with knowledge of the safety problems associated with Baby Foods, and suppressed this knowledge from the general public. Defendant made conscious decisions not to redesign, warn or inform the unsuspecting public. Defendant's reckless conduct warrants an

1    award of punitive damages.

2          66.    The Defendant's lack of adequate warnings and instructions accompanying its Baby

3    Foods were a substantial factor in causing Plaintiff's injuries.

4          67.    As a direct and proximate result of the Defendant's failure to provide an adequate

5    warning of the risks of Baby Foods, Plaintiff has been injured, sustained severe and permanent pain,

6    suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but

7    not limited to past and future medical expenses, lost income, and other damages.

8          68.    **WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in

9    Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such

10   other and further relief as this Court deems just and proper.

11                **COUNT II: STRICT PRODUCTS LIABILITY – DESIGN DEFECT**

12         69.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as

13   if fully stated herein.

14         70.    At all times herein mentioned, Defendant designed, manufactured, tested, marketed,

15   sold, handled, and distributed the Baby Foods consumed by Plaintiff. These actions were under the

16   ultimate control and supervision of Defendant.

17         71.    At all relevant times, Defendant's Baby Food products were manufactured, designed,

18   and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use by

19   or exposure to infants and babies, including Plaintiff.

20         72.    Defendant's Baby Food products as researched, tested, developed, designed, licensed,

21   manufactured, packaged, labeled, distributed, sold, and marketed by Defendant were defective in

22   design and formulation in that, when they were placed into the stream of commerce, they were

23   unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would

24   contemplate.

25         73.    Defendant's Baby Food products, as researched, tested, developed, designed, licensed,

26   manufactured, packaged, labeled, distributed, sold, and marketed by Defendant were defective in

27   design and formulation in that, when they left the hands of Defendant, the foreseeable risks exceeded

28   the alleged benefits associated with their design and formulation.

74.     At all relevant times, the Baby Food products consumed by Plaintiff was expected to and did reach Plaintiff without a substantial change in its condition as manufactured, handled, distributed, and sold by Defendant.

75.     At all relevant times, Defendant knew or had reason to know that its Baby Food products were defective and were inherently dangerous and unsafe when used in the manner instructed and provided by Defendant.

76.     Therefore, at all relevant times, Defendant's Baby Food products, as researched, tested, developed, designed, registered, licensed, manufactured, packaged, labeled, distributed, sold and marketed by Defendant were defective in design and formulation, in one or more of the following ways:

When placed in the stream of commerce, Defendant's Baby Food products were unreasonably dangerous in that they were hazardous and posed a grave risk of causing brain injury that manifests as the neurodevelopmental disorders ASD and related *sequalae* when used in a reasonably anticipated manner due to the substantial quantities of Toxic Heavy Metals in the Baby Foods; When placed in the stream of commerce, Defendant's Baby Food products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner; Defendant did not sufficiently test, investigate, or study its Baby Food products; Exposure to the Toxic Heavy Metals in Defendant's Baby Food products present a risk of harmful effects that outweigh any potential utility stemming from their use; Defendant knew or should have known at the time of marketing Baby Food products that exposure to its Baby Food products could result in brain injury that manifests as ASD and related *sequalae* in children;  Defendant did not conduct adequate post-marketing surveillance of its Baby Food products; and Defendant could have employed safer alternative designs and formulations.

77.     Plaintiff consumed Defendant's Baby Food products in an intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

78.     Defendant's Baby Food products were and are more dangerous than alternative products, and Defendant could have designed its Baby Food products to avoid harm to children. Indeed, at the time Defendant designed the Baby Food products, the state of the industry's scientific

knowledge was such that a less risky design or formulation was attainable.

79.     At the time the Baby Food products left Defendant's control, there was a practical, technically feasible and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Defendant's Baby Foods.

80.     Defendant has intentionally and recklessly defectively designed the Baby Foods with wanton and willful disregard for the rights and health of the Plaintiff, and with malice, placing its economic interests above the health and safety of the Plaintiff.

81.     The design defects in Defendant's Baby Foods were substantial factors in causing Plaintiff's injuries.

82.     As a direct and proximate result of the Defendant's defective design of the Baby Foods, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but not limited to medical expenses, lost income, and other damages.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

**COUNT III: STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**

83.     Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

84.     At all times herein mentioned, Defendant designed, manufactured, tested, marketed, sold, handled, and distributed the Baby Foods consumed by Plaintiff.

85.     At all relevant times, the Baby Foods consumed by Plaintiff was expected to and did reach Plaintiff without a substantial change in its condition as manufactured, handled, distributed, and sold by Defendant.

86.     At all relevant times, the Baby Foods consumed by Plaintiff was used in a manner that was foreseeable and intended by Defendant.

87.     The Baby Foods consumed by Plaintiff was not reasonably safe for their intended use and were defective with respect to their manufacture, as described herein, in that Defendant deviated

materially from their design and manufacturing specifications and/or such design and manufacture posed an unreasonable risk of harm to Plaintiff.

88.     The Defendant's Baby Foods are inherently dangerous and defective, unfit and unsafe for its intended and reasonably foreseeable uses, and do not meet or perform to the expectations of parents or children.

89.     The Baby Foods create risks to the health and safety of babies that are far more significant and devastating than the risks posed by other baby food products, and which far outweigh the utility of the Baby Foods products because of Defendant's manufacturing defects, which included but were not limited to: Failure to adequately inspect/test the Baby Foods during the manufacturing process; Failure to implement procedures that would reduce or eliminate the levels of Toxic Heavy Metals in Baby Foods; Failure to avoid using ingredients free from, or which contain far less, Toxic Heavy Metals to manufacture Baby Foods.

90.     Defendant has intentionally and recklessly manufactured the Baby Foods with wanton and willful disregard for the rights and health of the Plaintiff, and with malice, placing its economic interests above the health and safety of the Plaintiff.

91.     The manufacturing defects in Defendant's Baby Foods were substantial factors in causing Plaintiff's injuries.

92.     As a direct and proximate result of the Defendant's defective manufacture of the Baby Foods, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but not limited to medical expenses, lost income, and other damages.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

### COUNT IV: NEGLIGENCE – FAILURE TO WARN

93.     Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

94.     At all relevant times, Defendant engaged in the business of testing, developing,

designing, manufacturing, marketing, selling, distributing, and promoting Baby Foods. Defendant knew or by the exercise of reasonable care should have known that its Baby Foods are not accompanied with adequate warnings concerning the dangerous characteristics of Baby Foods and Toxic Heavy Metals. These actions were under the ultimate control and supervision of Defendant.

95.    Defendant researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce its Baby Foods, and in the course of same, directly advertised or marketed the products to consumers and end users, including Plaintiff, and therefore had a duty to warn of the risks associated with the use of Baby Foods.

96.    At all relevant times, Defendant had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain, supply, provide proper warnings, and take such steps as necessary to ensure its Baby Foods did not cause users and consumers to suffer from unreasonable and dangerous risks. Defendant had a continuing duty to warn Plaintiff of dangers associated with Baby Foods. Defendant, as a manufacturer, seller, or distributor of food products, is held to the knowledge of an expert in the field.

97.    At the time of manufacture, Defendant could have provided warnings regarding the full and complete risks of Baby Foods and Toxic Heavy Metals because it knew or should have known use of Baby Foods was dangerous, harmful and injurious when used by Plaintiff in a reasonably foreseeable manner.

98.    At all relevant times, Defendant failed and deliberately refused to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of its products and to those who would foreseeably use or be harmed by Defendant's Baby Foods.

99.    Defendant knew or should have known that Baby Foods posed a grave risk of harm, but failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure to the products. The dangerous propensities of its products and the characteristics of Toxic Heavy Metals contained in substantial amounts in its Baby Foods, as described above, were known to Defendant, or scientifically knowable to Defendant through appropriate research and testing by known methods, at the time it distributed, supplied or sold the product, and were not known to end

users and consumers, such as the Plaintiff.

100.    Defendant further breached its duty by failing to use reasonable care to adequately warn or instruct consumers (*i.e.*, the reasonably foreseeable users) of the risks of exposure to its products. Defendant failed to warn and have wrongfully concealed information concerning the dangerous level of Toxic Heavy Metals in its Baby Foods and the potential for consumed Baby Foods to expose babies and toddlers to Toxic Heavy Metals, and further, have made false and/or misleading statements concerning the safety of Baby Foods.

101.    At all relevant times, Plaintiff was exposed to excessive levels of Toxic Heavy Metals through consumption of Toxic Heavy Metals while using them for their intended or reasonably foreseeable purposes, without knowledge of their dangerous characteristics.

102.    Defendant knew or should have known that the minimal warnings disseminated with its Baby Foods were inadequate, failed to communicate adequate information on the dangers and safe use/exposure, and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended and reasonably foreseeable uses.

103.    The information that Defendant did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled consumers such as Plaintiff to avoid using the product. Instead, Defendant disseminated information that was inaccurate, false, and misleading, and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries with use of and/or exposure to Baby Foods; continued to aggressively promote the efficacy of its products, even after it knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of consuming Baby Foods.

104.    A reasonable company under the same or similar circumstance would have warned and instructed of the dangers of Baby Foods and Toxic Heavy Metals contained therein.

105.    This alleged failure to warn is not limited to the information contained on the labeling of Defendant's Baby Foods. Defendant was able, in accord with federal law, to comply with relevant state law by disclosing the known risks associated with Baby Foods and Toxic Heavy Metals through

other non-labeling mediums, *i.e.*, promotion, advertisements, public service announcements, and/or public information sources.  But the Defendant did not disclose these known risks through any medium.

106.    Furthermore, Defendant possesses a First Amendment Right to make truthful statements about the products it sells, and no law could lawfully restrict that constitutional right.

107.    Had Defendant provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with its Baby Foods, Plaintiff could have avoided the risk of developing injuries and could have obtained or used alternative products. However, as a result of Defendant's concealment of the dangers posed by its Baby Foods, Plaintiff could not have averted her injuries.

108.    Defendant's conduct, as described above, was reckless. Defendant risked the lives of consumers and users of its products, including Plaintiff, with knowledge of the safety problems associated with Baby Foods, and suppressed this knowledge from the general public. Defendant made conscious decisions not to redesign, warn or inform the unsuspecting public. Defendant's reckless conduct warrants an award of punitive damages.

109.    The Defendant's lack of adequate warnings and instructions accompanying its Baby Foods were a substantial factor in causing Plaintiff's injuries.

110.    As a direct and proximate result of the Defendant's failure to provide an adequate warning of the risks of Baby Foods, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but not limited to past and future medical expenses, lost income, and other damages.

111.    **WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

### COUNT V: NEGLIGENT PRODUCT DESIGN

112.    The Defendant knew or, by the exercise of reasonable care, should have known, ordinary consumers such as Plaintiff would not have realized the potential risks and dangers of Baby Foods.

113.    The Defendant owed a duty to all reasonably foreseeable users to design a safe product.

114.    The Defendant breached its duty by failing to use reasonable care in the design of Baby Foods because the product exposed users to unsafe levels of Toxic Heavy Metals.

115.    The Defendant breached its duty by failing to use reasonable care in the design of Baby Foods by negligently designing the Baby Foods with ingredients and/or components high in Toxic Heavy Metals.

116.    The Defendant breached its duty by failing to use reasonable care in the design of Baby Foods by negligently designing and formulation, in one or more of the following ways:

117.    When placed in the stream of commerce, Defendant's Baby Foods were defective in design and formulation, and, consequently, dangerous to an extent beyond that which an ordinary consumer would contemplate;

118.    When placed in the stream of commerce, Defendant's Baby Foods were unreasonably dangerous in that they were hazardous and posed a grave risk of neurodevelopmental disorders and other serious illnesses when used in a reasonably anticipated manner;

119.    When placed in the stream of commerce, Defendant's Baby Foods contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner;

120.    Defendant did not sufficiently test, investigate, or study its Baby Foods and, specifically, the content of Toxic Heavy Metals in the ingredients used to manufacture the foods and/or the finished products;

121.    Defendant did not sufficiently test, investigate, or study its Baby Foods and, specifically, the ability for Baby Foods to expose babies to high amounts of Toxic Heavy Metals;

122.    Exposure to Baby Foods presents a risk of harmful effects that outweigh any potential utility stemming from the use of the products;

123.    Defendant knew or should have known at the time of marketing Baby Foods that exposure to Toxic Heavy Metals contained in the Baby Foods could result in brain injury that manifests as ASD and other severe illnesses and injuries;

    a.   Defendant did not conduct adequate post-marketing surveillance of its Baby Foods; and

    b.   Defendant could have employed safer alternative designs and formulations. For example, the Defendant could have avoided use of certain ingredients high in Toxic Heavy Metals, avoided using pre-mix vitamins high in Toxic Heavy Metals, and/or sampled its ingredients from other sources.

124.    The Defendant breached its duty by failing to use reasonable care by failing to use cost effective, reasonably feasible alternative designs. There was a practical, technically feasible, and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Defendant's Baby Foods.

125.    A reasonable company under the same or similar circumstances would have designed a safer product.

126.    Plaintiff was harmed directly and proximately by the Defendant's failure to use reasonable care in the design of its Baby Foods. Such harm includes significant exposure to Toxic Heavy Metals, which can cause or contribute to brain injury that manifests as ASD and related *sequalae*.

127.    Defendant's defective design of Baby Foods was willful, wanton, malicious, and conducted with reckless disregard for the health and safety of consumers of the Baby Foods, including Plaintiff.

128.    The defects in Defendant's Baby Foods were substantial factors in causing Plaintiff's injuries.

129.    As a direct and proximate result of the Defendant's defective design of the Baby Foods, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but not limited to past and future medical expenses, lost income, and other damages.

130.    **WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT VI: NEGLIGENT MANUFACTURING

131.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

132.    At all relevant times, the Defendant manufactured, tested, marketed, sold, and distributed the Baby Foods that Plaintiff consumed.

133.    The Defendant had a duty to exercise reasonable care, in the manufacturing, testing, marketing, sale, and distribution of Baby Foods.

134.    The Defendant knew or, by the exercise of reasonable care, should have known, use of Baby Foods were carelessly manufactured, dangerous, harmful and injurious when used by Plaintiff in a reasonably foreseeable manner.

135.    The Defendant knew or, by the exercise of reasonable care, should have known, ordinary consumers such as Plaintiff would not have realized the potential risks and dangers of Baby Foods improperly manufactured, tested, marketed, distributed, and sold.

136.    Without limitation, examples of the manner in which Defendant breached its duty to exercise reasonable care in manufacturing Baby Foods, included:

        a.    Failure to adequately inspect/test the Baby Foods during the manufacturing process;

        b.    Failure to implement procedures that would reduce or eliminate levels of Toxic Heavy Metals in Baby Foods; and

        c.    Failure to avoid using ingredients free from, or which contain far less, Toxic Heavy Metals to manufacture Baby Foods.

137.    A reasonable manufacturer under the same or similar circumstances would have implemented appropriate manufacturing procedures to better ensure the quality and safety of its product.

138.    Plaintiff was harmed directly and proximately by the Defendant's failure to use reasonable care in the manufacture of its Baby Foods. Such harm includes significant exposure to Toxic Heavy Metals, which can cause or contribute to brain injury which manifests as ASD and related *sequalae*.

139.    Defendant's improper manufacturing of Baby Foods was willful, wanton, malicious, and conducted with reckless disregard for the health and safety of users of the Baby Foods, including Plaintiff.

140.    The defects in Defendant's Baby Foods were substantial factors in causing Plaintiff's injuries.

141.    As a direct and proximate result of the Defendant's improper manufacturing of Baby Foods, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, economic loss and damages including, but not limited to past and future medical expenses, lost income, and other damages.

142.    **WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

143.    Plaintiff demands a trial by jury on all the triable issues within this pleading.

## PRAYER FOR RELIEF

144.    WHEREFORE, Plaintiff requests the Court to enter judgment in Plaintiff's favor and against the Defendant for:

    a.    actual or compensatory damages in such amount to be determined at trial and as provided by applicable law;

    b.    exemplary and punitive damages sufficient to punish and deter the Defendant and others from future wrongful practices;

    c.    pre-judgment and post-judgment interest;

    d.    costs including reasonable attorneys' fees, court costs, and other litigation expenses; and

    e.    any other relief the Court may deem just and proper.

Dated:  March 22, 2024                **WAGSTAFF LAW FIRM**

                                      */s/ Aimee H. Wagstaff*
                                      Aimee H. Wagstaff (SBN 278480)
                                      awagstaff@wagstafflawfirm.com
                                      940 N. Lincoln Street
                                      Denver, CO 80203
                                      Tel: 303-376-6360

                                      *Attorney for Plaintiff*